IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-23-FL

| | |
|---|---|
| JOHNNY PEARSON, )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-19, DE-21] pursuant to Fed. R. Civ. P. 12(c). Claimant Johnny Pearson[1] ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on January 31, 2008, alleging disability beginning January 1, 2005. (R. 13). His claim was denied initially and

---

[1] Claimant is identified as Johnny Pearson in the pleadings, but the administrative record identifies Claimant as Johnny Douglas Pearson.

upon reconsideration. (R. 13). A hearing before the Administrative Law Judge ("ALJ") was held on February 10, 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 13). On March 3, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 13-22). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 9), and submitted additional evidence as part of his request (R. 7). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on December 23, 2011. (R. 3-7). Claimant then filed a complaint in this court seeking review of the now final administrative decision. [DE-1].

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in

conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to find Claimant's

3

impairments met Listing 1.04; (2) improper substitution of the ALJ's "layman" (or non-medical) opinion in determining Claimant's residual functional capacity ("RFC"); (3) improper evaluation of medical opinions; (4) improper finding that Claimant has the mental capacity to perform work *in excess* of simple, routine, repetitive tasks; (5) failure to explain the basis for his physical RFC finding; (6) failure to include in the RFC determination and in the hypothetical posed to the VE that Claimant has moderate limitation in completing a normal workday and is limited to simple, routine, repetitive tasks; (7) failure to include in the RFC determination and the hypothetical posed to the VE Claimant's limitation in bending and stooping; and (8) failure to include in the hypothetical posed to the VE significant mental limitations caused by medication.[2] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 12-21.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: post traumatic stress disorder ("PTSD"), depression, mild degenerative disc disease of the lumbar spine, status post low back injury in 1985, non-insulin dependent diabetes mellitus, obesity and hypertension. *Id.* The ALJ also found Claimant had a nonsevere impairment of gastrointestinal reflux disease ("GERD"). (R. 15). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or

---

[2] The court discusses the alleged assignments of error pursuant to the sequential evaluation process and not as presented by Claimant.

4

medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate restriction in his activities of daily living, mild difficulties in social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[3] requiring a sit/stand option every 45 to 60 minutes with occasional exposure to the public and occasional overhead reaching in a non-production/non-quota environment. (R. 17). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 19). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a handyman. (R. 20-21). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 43 years old and unemployed. (R. 32, 33). Claimant is a high school graduate and received an associate degree. (R. 33, 48, 49).

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

Claimant was last employed as a construction worker or "handyman" where his duties included being on his feet and lifting. (R. 33, 34). Claimant was a member of the military in the 1980s and experienced an accident in 1985 where Claimant fell 40 to 50 feet while repelling from a cliff. (R. 34, 35). Claimant was discharged from the military following this accident and Claimant received surgery on his ankle, but not his back which also sustained injury. (R. 35, 42). Claimant worked in the computer industry briefly following the accident, but was unable to maintain such jobs because he could not sit at a desk. (R. 49).

Claimant explained numerous medical conditions support his disability claim and his inability to work full-time. These medical conditions include PTSD, depression, anxiety, pain in his back, ankle, knee, and neck, GERD, diabetes, and high blood pressure. (R. 34, 35, 36, 37, 38, 39). Claimant testified he weighs over 300 pounds. (R. 33). Claimant testified that he continuously experiences pain at the level of 8 or 9 (on a scale of one to ten). (R. 36). Claimant testified that he experiences muscle spasms and that medication eases the pain, but does not resolve it. (R. 36). Claimant testified that the pain disrupts his sleep and he only sleeps three to five hours per night. (R. 36). Claimant testified he uses a cane to assist his movement when he leaves his home. (R. 37). Claimant testified he has been to the emergency room almost four times in the past 12 months due to back pain. (R. 41).

Claimant testified he suffers from anxiety that developed as a result of his repelling accident and that he experiences panic attacks and flashbacks to the accident. (R. 37, 38). Claimant also experiences crying spells, sweating, and shortness of breath. (R. 37, 38). The panic attacks occur spontaneously and Claimant testified he has such attacks four to five times each week. (R. 39). Claimant testified he does not like to be around crowds and that his anxiety problems have

6

progressively worsened. (R. 38). Claimant testified that his short-term memory is poor and that he is unable to concentrate. (R. 38). Claimant testified he experiences suicidal thoughts at times, but has not acted on these thoughts because of his wife and children. (R. 39).

Claimant testified he is on the strongest available medication for treatment of his reflux, but still suffers from coughing. (R. 39). Claimant testified his diabetes make him feel weak and tired and that his fingers are constantly swollen. (R. 39). Additionally, his blood sugars are elevated. (R. 43). Claimant experiences numbness and tingling in his feet for which he takes medication. (R. 40). Claimant testified his high blood pressure is still uncontrolled despite taking prescribed medication. (R. 40). Claimant was determined to be 100 percent disabled by the Department of Veterans Affairs ("VA"). (R. 40).

Claimant testified he is unable to stand, sit or walk for more than 15 minutes because of back pain. (R. 43). In a typical day, Claimant testified he gets up around four o'clock in the morning and spends his time at home. (R. 44, 45). Claimant spends half the day lying down. (R. 43). Claimant naps throughout the day and is constantly moving around the house because he cannot find a comfortable position. (R. 44). Claimant testified he can only lift five pounds and that he can no longer fish, hunt, work in the yard or participate in activities with his friends. (R. 43, 44). Claimant testified that he drives only to doctor appointments and only when his wife cannot drive him. (R. 44). Claimant's wife performs all the housework and Claimant testified he feels bad that he is not able to help her. (R. 45, 46).

### III. Vocational Expert's Testimony at the Administrative Hearing

Ms. Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 13, 48-51). After the VE's testimony regarding Claimant's past work experience (R. 48), the ALJ asked the VE to

7

assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work involving a sit/stand option every 45 to 60 minutes, non-production/non-quota work with only occasional exposure to the public and only occasional overhead reaching. (R. 50). The VE responded in the negative. (R. 50). When asked if there would be other jobs available for the hypothetical individual, the VE responded with the following positions: (1) office helper (DOT #239.567-010); (2) photocopy machine operator (DOT #207.685-014); and (3) mail sorter (DOT #209.687-026). (R. 50). The ALJ asked further if there would be jobs available if the hypothetical individual needed to maintain the posture of lying down. (R. 51). The VE responded in the negative. (R. 51).

## DISCUSSION

### I. The ALJ did not err in concluding Claimant did not meet Listing 1.04.

Claimant contends the ALJ erroneously concluded that Claimant's disc extrusion contacting the spine did not satisfy the Listing 1.04 requirements (disorders of the spine). Pl.'s Mem. at 12.

To be deemed disabled according to the listings, the claimant must present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir.1986); *see also* 20 C.F.R. § 404.1526. "For a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." Soc. Sec. Rul.

("S.S.R.") 96-6p, 1996 SSR LEXIS 3, at *7-8, 1996 WL 374180, at *3. In order to determine whether a medical impairment equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding.... [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c).

Listing 1.04 refers generally to disorders of the spine, such as spinal stenosis, osteoarthritis and degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord. *See* C.F.R. § 404, Subpt. P., App. 1, § 1.04. The court observes that Claimant discusses none of the requirements for Listing 1.04 and, in fact, fails to identify under which subsection (Listing 1.04A, B or C) his impairment allegedly falls. Rather, Claimant simply cites a December 2007 MRI in the record which reported a "lower cervical disc extrusion with superior migration . . . contacts the anterior cord." Pl.'s Mem. at 12; (R. 255). However, the relevant subsection appears to be Listing 1.04A based on Claimant's abbreviated argument which does not highlight any evidence supporting subsections B or C. Claimant argues the ALJ erred in not finding listing-level pain under Listing 1.04 because "[i]t seems to [Claimant's] counsel – granted a layman – that a disc extrusion which contacts the spinal cord would cause excruciating pain" and the December 2007 MRI indicates compression of the spinal cord which is sufficient for Listing 1.04. Pl.'s Mem. at 12. However, Claimant's argument fails to cite medical findings supporting these conclusions.

In order to satisfy Listing 1.04A, a claimant must produce evidence of nerve root compression characterized by the following clinical findings: (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and, (4) if there is involvement of the

9

lower back, positive straight-leg raising test (sitting and supine). *See* C.F.R. § 404, Subpt. P., App. 1, § 1.04A; *see also Sullivan*, 493 U.S. at 530 (stating that a claimant must prove he meets all the specified medical criteria). In making his step-three finding, the ALJ found the medical evidence did not support a finding that Claimant's degenerative disc disease met any Listing 1.04 criteria because "[c]laimant does not have symptoms or signs of nerve root compression syndrome, arachnoiditis or lumbar stenosis as required for degenerative disc disease to meet Listing 1.04." (R. 15). Claimant does not dispute the finding of the ALJ apart from offering his opinion - unsupported by the medical record – that a disc extrusion contacting the spinal cord would cause listing-level pain. Pl.'s Mem. at 12. In response, Defendant argues that there must be a clinical finding of compression and that mere contact with the spinal cord, as indicated in the MRI, is insufficient. Def.'s Mem. at 9-10. A review of the record in this case confirms Defendant's position. The MRI that Claimant cites for his underlying proposition provides no support. The MRI does not contain medical statements confirming the existence of compression and Claimant has not produced any other supporting evidence.

Moreover, the Claimant has failed to produce evidence to satisfy the other requirements of Listing 1.04A, specifically limitation of motion of the spine and motor loss. As the ALJ discussed subsequently in his decision, a report from Dr. E.C. Land on April 3, 2008 indicated Claimant had full range of motion of the cervical spine with moderate stiffening of the lumbar spine on ambulation, along with 4+/5 motor strength in the left hand and 5/5 motor strength in the right hand with 5/5 deltoid strength and 5/5 dorsiflexor strength in both feet. (R. 18, 307). Additionally, Claimant had full range of motion of the hips, knees, ankles, toe joints, shoulders, elbows, wrists, and finger joints. (R. 18, 307). In December 2007, the same date as the MRI Claimant cites in

10

support of his contention, it was noted in emergency department notes that Claimant had 5/5 motor strength throughout with symmetrical reflexes. (R. 232). Claimant does not cite evidence to the contrary, and in fact, does not discuss the criteria of motor loss and limited spine movement. Accordingly, the court finds that the ALJ's conclusion that Claimant's degenerative disc disease does not meet Listing 1.04 is supported by substantial evidence in the record and that the ALJ's analysis was sufficient and not erroneous.

## II.     The ALJ erred in evaluating the opinion of Claimant's treating psychiatrist.

Claimant contends the ALJ erred by assigning only minimal weight to the opinion of Dr. Hay, Claimant's treating psychiatrist, and limited weight to the opinion of Ms. Jamison when determining Claimant's RFC. Pl.'s Mem. at 15. More specifically, Claimant contends the ALJ failed to "minimally articulate the basis for [his] conclusion" to assign minimal weight to Dr. Hay's opinion and that Ms. Jamison's opinion should be given increased weight because it was signed and approved by Dr. Burgess. *Id.* at 16, 17.

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(c)(2). However, though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may

11

choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. § 404.1527(c)(3)

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

i. <u>Dr. Hay</u>

The first medical opinion contained in the record appears in a mental "Medical Source Statement of Ability to do Work-Related Activities" dated February 3, 2010 wherein Dr. Hay, Claimant's treating psychiatrist, indicated Claimant has "marked" to "extreme" limitations in all assessment areas and ultimately concluded Claimant is "totally disabled – unable to sustain part-time or full-time employment." (R. 446-448). The ALJ failed to acknowledge the length,

12

frequency, nature and extent of Claimant's treatment relationship with Dr. Hay by failing to cite any of Dr. Hay's treatment notes; however, the record only details a total of two visits which occurred in November 2008 and February 2009. (R. 363, 383, 420). The only citation that the ALJ provides to Dr. Hay's record is the instant medical opinion at issue. (R. 20). The ALJ does cite other evidence documenting Claimant's psychological examinations and treatment through his discussion of Claimant's visits at the VA Medical Center in August 2008, October 2008 and December 2008, but these were not specifically Dr. Hay's records. (R. 18, 19, 395, 396, 398, 403, 406, 409, 431, 432).

Dr. Hay's medical opinion is contained in her February 2010 medical report. The ALJ assigned minimal weight to this opinion and explained that he assigned only minimal weight to her opinion because the opinion was "out of proportion to the longitudinal and objective record." (R. 20). The ALJ provided no other explanation as to why he afforded Dr. Hay's opinion, one of a treating physician, only minimal weight. As it stands, the ALJ's explanation is merely conclusory and lacks any meaningful factual comparisons. (R. 20). Intrinsic in the RFC determination is the weighing of medical opinions. *See* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7. The regulations provide that the ALJ "must explain why [an] opinion was not adopted" and resolve any inconsistencies in the record. *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2); *Russell v. Comm'r of Social Security*, 440 F. App'x 163, 164 (4th Cir. 2011) ("If the ALJ does not give the treating physician's opinion controlling weight, she must 'give good reasons in [her] notice of determination or decision for the weight [she] give[s] [the] treating source's opinion.'"). The ALJ did not explain the decision to give only minimal weight to the opinion of Dr. Hay to the extent the regulations require because he did not make sufficiently clear

Case 4:12-cv-00023-FL   Document 23   Filed 01/15/13   Page 13 of 16

for this court, the reviewing court, the reasons for his weight assignment. S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5. Accordingly, the court cannot conclude that the ALJ's discounting of Dr. Hay's opinion is supported by substantial evidence.

    ii.    Ms. Jamison, M.A.

The second medical opinion at issue is that of Ms. Jamison, a psychological associate, who performed a psychological consult exam on April 4, 2008. (R. 304). Ms. Jamison opined that Claimant could perform simple, routine tasks, could relate well to others on the job, but would have difficultly with day to day work activities because of the heavy sedative effects of his pain medication. (R. 303, 304).[4] The ALJ assigned Ms. Jamison's opinion "limited weight" stating "the record indicates claimant would have some difficultly in social setting and [] that he could perform more than simple, routine, repetitive tasks." (R. 20). Additionally, the ALJ stated "the record does not support a conclusion that his medications would preclude daily activities." (R. 20).

As opposed to the ALJ's previous failure to adequately explain his reasoning for giving less weight to Dr. Hay's opinion, the ALJ has correctly explained his weight assignment here. The court is not left to speculate what the ALJ's specific reasons were for assigning limited weight. The ALJ cited specific issues in the record which prove inconsistent with Ms. Jamison's opinion. For example, the ALJ specifically noted that the record showed Claimant could perform

---

[4] Claimant contends the report completed by Ms. Jamison is essentially Dr. Burgess' opinion because Dr. Burgess signed the report. The court does not address this alleged distinction because the court finds regardless that the ALJ adequately explained the decision to assign Ms. Jamison's consult opinion limited weight. Moreover, Ms. Jamison is not an acceptable medical source so the ALJ is permitted to discount her opinion even though some courts have held opinions of non-physicians may be considered an acceptable medical source where the record clearly established they were acting as an agent of the physician. *See Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996).

14

more than repetitive work and that there was no indication of medication side effects producing further limitation. (R. 20). While an ALJ has a duty to provide specific reasons for the weight given to medical opinions, this does not require the ALJ to expressly set forth a "factor-by-factor analysis" of each item which might bear on the weight given to an opinion. *See Warren v. Astrue*, No. 5:08-CV-149-FL, 2009 U.S. Dist. LEXIS 41852, at *7, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009). Accordingly, the court is able to conclude that the ALJ's discounting of Ms. Jamison's opinion is supported by substantial evidence.

Since the court concludes that remand is necessary because of the ALJ's failure to clearly articulate his reasons for assigning minimal weight to a treating psychiatrist's opinion, it is not necessary for the court to reach the other assignments of error in this case as those arguments necessarily rely on the weight assigned by the ALJ to a treating physician opinion.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-19] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-21] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal

conclusions not objected to, and accepted by, the District Court.

Submitted, this the 14th day of January, 2013.

                                                Robert B. Jones, Jr.
                                                United States Magistrate Judge

16

Case 4:12-cv-00023-FL Document 23 Filed 01/15/13 Page 16 of 16